UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

RANDA L. LANTHIER,

                                        Plaintiff,


                    -vs-                                         14-CV-013-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

─────────────────────────────────────

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (ELIZABETH ANN HAUNGS,
                ESQ., of Counsel), Amherst, New York, for Plaintiff.

                WILLIAM J. HOCHUL, JR., United States Attorney (SIXTINA
                FERNANDEZ, Special Assistant United States Attorney, of Counsel),
                Buffalo, New York, for Defendant.

       This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated December 15, 2014 (Item

12).

       Plaintiff Randa Lanthier initiated this action on January 3, 2014, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI")

benefits under Titles II and XVI of the Act.   Plaintiff has moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Item 8).   For

the following reasons, plaintiff's motion is denied.

## BACKGROUND

Plaintiff was born on November 11, 1988 (Tr. 104).[1]   She filed applications for DIB and SSI on February 28, 2011, alleging disability due to learning disability and attention deficit hyperactivity disorder ("ADHD"), with an onset date of February 28, 2011  (Tr. 104-12).   The claims were denied administratively on May 11, 2011 (*see* Tr. 54-59). Plaintiff requested a hearing, which was held on September 24, 2012, before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 25-51).   Plaintiff appeared and testified at the hearing, and was represented by counsel.

On October 4, 2012, ALJ Lewandowski issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 8-20).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff had the following "severe" impairments: learning disability, ADHD, and major depressive disorder (Tr. 10).   However, the ALJ found that the evidence in the record regarding plaintiff's signs, symptoms and functional limitations did not support a finding that these impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").   The ALJ specifically considered the criteria for mental impairment Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders), but found that plaintiff's mental impairments did not result in restrictions or limitations to the degree necessary to meet or

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

equal any of these Listings (Tr. 15-16).  The ALJ discussed the evidence in the record regarding plaintiff's medically determinable mental impairments–including school records, treatment notes and records from health care facilities, and the report of a consultative psychiatric evaluation, along with plaintiff's hearing testimony and statements about the limiting effects of her impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: plaintiff is restricted to the performance of jobs involving simple instructions, simple, routine, and repetitive tasks, only occasional interaction with others, no multi-tasking, no fast-paced production rate, a regular, simple schedule, only occasional simple decisions, and no more than basic math or reading requirements (Tr. 16). Considering plaintiff's age (22 years at the time of the hearing), high school education, work experience (no past relevant work), and RFC, and relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform and that she has not been under a disability from the time of her applications through the date of the decision (Tr. 19-20).

The ALJ's decision became the final decision of the Commissioner on November 6, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the RFC determination was not supported by substantial evidence; (2) the ALJ erred in his evaluation of the opinion of plaintiff's treating psychiatrist; and (3) the ALJ erred in his assessment of plaintiff's credibility.   *See* Item 8-1.   The government contends that the Commissioner's

3

determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record. *See* Item 10.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for DIB and SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for

evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is presently engaged in substantial

gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe"

impairment, which is an impairment or combination of impairments that has lasted (or may

be expected to last) for a continuous period of at least 12 months which "significantly limits

[the claimant's] physical or mental ability to do basic work activities …."  20 C.F.R.

§§ 404.1520(c), 416.920(c); *see also* §§ 404.1509,  416.909 (duration requirement).  If the

claimant's impairment is severe and of qualifying duration, the ALJ then determines

whether it meets or equals the criteria of an impairment found in the Listings.  If the

impairment meets or equals a listed impairment, the claimant will be found to be disabled.

If the claimant does not have a listed impairment, the fourth step requires the ALJ to

determine if, notwithstanding the impairment, the claimant has the residual functional

capacity to perform his or her past relevant work.  If the claimant has the RFC to perform

his or her past relevant work, the claimant will be found to be not disabled, and the

sequential evaluation process comes to an end.  Finally, if the claimant is not capable of

performing the past relevant work, the fifth step requires that the ALJ determine whether

the claimant is capable of performing any work which exists in the national economy,

considering the claimant's age, education, past work experience, and RFC.  *See Curry v.*

*Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2

(W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the

analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show

that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603). Where the record supports a finding that the claimant's non-exertional limitations would have little or no effect on the occupational base of unskilled work, the ALJ may properly rely on the Grids as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation. *Cornell v. Colvin*, 2014 WL 1572342, at *9 (W.D.N.Y. Apr. 18, 2014) (citing *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010); *Bapp*, 802 F.2d at 605-06).

## III.    The ALJ's Disability Determination

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since February 28, 2011, the alleged onset (Tr. 10). At step two, the ALJ determined that plaintiff's impairments are

"severe" as that term is defined in the regulations because they impose significant work-related functional limitations (Tr. 15).  As noted above, at step three the ALJ found that plaintiff's impairments did not meet or medically equal the severity of a listed impairment, with specific consideration given to the criteria of mental impairment Listings 12.02, 12.04, or 12.06 (Tr. 15-16).  The ALJ then found that plaintiff had the RFC for a full range of work at all exertional levels, with certain non-exertional limitations (Tr. 16).  In making this determination, the ALJ discussed plaintiff's hearing testimony and statements in the record regarding her symptoms, along with the objective medical evidence contained in the treatment records and reports obtained from consultative examiner Dr. Susan Santarpia, Erie County Medical Center ("ECMC"); Elmwood Health Center, Dr. Wendy Weinstein, and a state agency review psychiatrist (Tr. 10-15).  Based upon his consideration of this evidence, the ALJ found that plaintiff's allegations regarding the limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment, and that the record otherwise failed to establish the presence of any disabling impairment (Tr. 17-18).   Upon determining that plaintiff had no past relevant work, at the final step of the sequential evaluation the ALJ found that there were jobs existing in substantial numbers in the national economy that plaintiff could perform considering her age, education, work experience, and RFC (Tr. 19).  The ALJ relied on the testimony of VE Jay Steinbrenner, who testified that plaintiff would be able to perform the requirements of representative occupations such as housekeeper, dishwasher, and warehouse worker (Tr. 19).

IV.     **Plaintiff's Motion**

A.  **RFC Determination**

Plaintiff first argues that the RFC determination was not based on substantial evidence.  Specifically, she contends that the ALJ did not account for limitations caused by plaintiff's ADHD.  As noted above, the RFC determination limited plaintiff to simple routine, and repetitive tasks, with only occasional interaction with others, no multi-tasking, no fast-paced production requirements, a regular, simple schedule, only occasional simple decisions, and no more than basic math or reading requirements (Tr. 16).

"Residual functional capacity" is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96–8p, 1996 WL 374184, *2 (S.S.A.1996). In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 2013 WL 4647643, at *8 (W.D.N.Y.  Aug. 29, 2013), *aff'd*, 579 F. App'x 27 (2d Cir. 2014). The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

Here, the ALJ described in detail the record evidence pertaining to plaintiff's mental capabilities. Specifically, the ALJ reviewed and noted the cognitive limitations discussed in plaintiff's educational records (Tr. 10-11). In addition, the ALJ reviewed the consultative

examination conducted by Dr. Santarpia, who estimated plaintiff's cognitive functioning in the below average to borderline range, but found her insight and judgment fair while her thought processes were coherent and goal-directed (Tr. 11-12, 345-46).  Dr. Santarpia concluded that plaintiff was able to understand and follow simple directions, perform simple tasks independently, maintain attention and concentration, maintain a schedule, make appropriate decisions, learn new tasks, make appropriate decisions, relate adequately with others, and deal appropriately with stress (Tr. 12, 346). The only limitation Dr. Santarpia found was a mild impairment in plaintiff's ability to perform complex tasks  independently. *Id.*

The ALJ also considered the opinion of the state review psychiatrist who found moderate limitations in plaintiff's mental residual functional capacity related to her ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychological symptoms, interact appropriately with the general public, maintain socially appropriate behavior, respond to changes in the workplace, and set realistic goals (Tr. 12, 364).

Additionally, the ALJ considered plaintiff's testimony regarding her mental limitations. Plaintiff stated that she worries excessively and stays home where she feels safe (Tr. 38).  She also testified that does housework and  laundry (Tr. 40-41). She has a driver's license, but no vehicle (Tr. 43). She uses a home computer to surf the web, shop online, and communicate via Facebook (Tr. 44-45).  Plaintiff testified that she worked as a cashier at Home Depot, but left the position when she moved (Tr. 31).  Plaintiff, who was pregnant at the time of the hearing, stated that she would be unable to do the job at Home Depot because of the occasional lifting of heavy objects. *Id.*

11

After reviewing the record evidence, the ALJ concluded that plaintiff was able to perform simple, routine and repetitive tasks and make occasional simple decisions involving only occasional interaction with others, no multi-tasking, no fast-paced production rate, a regular, simple schedule, and only basic math and reading requirements (Tr. 16). These limitations are consistent with the ALJ's assessment that plaintiff had moderate difficulties with concentration, persistence or pace due to her ADHD (Tr. 16). They are also consistent with the ALJ's assessment that plaintiff suffered from, at most, mild restrictions in activities of daily living and social functioning based upon her own reports that she socializes with friends and family, is able to go shopping, assists with household chores, and uses a computer (Tr. 15).  Accordingly, the court concludes that the ALJ adequately discussed plaintiff's mental capabilities and work-related functions and limitations and that the RFC assessment, which imposes limitations on plaintiff's ability to multi-task and work under past-paced production requirements, in addition to limiting her to simple, routine tasks, is supported by substantial evidence. *See Murphy v. Astrue,* 2013 WL 1452054 at *6 (W.D.N.Y. Apr. 9, 2013) ("the ALJ adequately explained how the evidence supports her conclusions about the claimant's limitations and discussed the claimant's ability to perform sustained work activities") (quoting *Casino–Ortiz v. Astrue*, 2007 WL 2745704, *14 (S.D.N.Y. Sept. 27, 2007), *report and recommendation adopted*, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008)). [2]  Accordingly, plaintiff is not entitled to remand or reversal on

---

[2]  Plaintiff's argument, that remand is required based on *Colon v. Astrue,* 2013 WL 2245457 (W.D.N.Y. May 21, 2013), is misplaced. In *Colon,* the ALJ ignored without explanation an opinion that the plaintiff had "poor or no ability to maintain attention and concentration." Here, the evidence indicated that plaintiff had only moderate limitations in concentration, persistence, and pace.  The ALJ adequately explained the weight he afforded all the medical opinions and, unlike in *Colon*, the limitations imposed here in the RFC were detailed and specific and involve more than a limitation to simple, routine tasks. Thus *Colon* is distinguishable on its facts.

the basis that the RFC is not supported by substantial evidence.

**B.  Treating Physician's Opinion**

Plaintiff further contends that the Commissioner's determination should be reversed because the ALJ's RFC assessment was based on an improper application of the rules set forth in the regulations for determining the weight to be given to the medical opinion of the claimant's treating physician.   As explained in numerous Second Circuit opinions, the Social Security regulations "recognize a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir .2003); *see also Cichocki v. Astrue,* 534 F. App'x 71, 74 (2d Cir. 2013).   However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Rather, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect the

consideration of various factors, including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always give good reasons" for the weight given to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayerv. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), quoted in *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999); *see also Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran*, 362 F.3d at 32–33 ("This requirement greatly assists our review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell*, 177 F.3d at 134).

In this case, Dr. Wendy Weinstein performed an initial psychiatric evaluation of plaintiff on October 27, 2011.  At that time, following the initial denial of her application, plaintiff complained of depression and stated that she "wants SSI." (Tr. 378).  She reported a loss of appetite, excessive sleep, and occasional suicidal ideation. *Id.*  Plaintiff also stated that she worries excessively, cannot concentrate, and procrastinates (Tr. 379).

Upon examination, Dr. Weinstein found plaintiff cooperative with clear and coherent speech and appropriate affect.  Her thought processes were goal-directed, her insight and judgment were fair, and her cognitive abilities were within normal limits (Tr. 379).  She denied suicidal or homicidal ideations.  *Id.*  Dr. Weinstein diagnosed major depression, general anxiety disorder, ADHD, and obsessive compulsive disorder and prescribed an antidepressant (Tr. 380).  A follow-up appointment in December 2011 found plaintiff "doing well" and "feeling a little better and less depressed" (Tr. 382).  She stated a desire to return to school and get a job, and Dr. Weinstein started her on Adderall.[3] *Id.*  In January 2012, after the addition of Adderall, plaintiff was "feeling more focused" (Tr. 383).  In February 2012, plaintiff expressed that she "could be doing a little better" (Tr. 364), and was "the same" in March 2012 (Tr. 385).  Dr. Weinstein switched plaintiff from Zoloft to Cymbalta.[4] *Id.*  In April 2012, plaintiff informed Dr. Weinstein that she was six weeks pregnant (Tr. 386).  She was not feeling depressed, was pleasant and cooperative, and felt that Cymbalta was "helping her tremendously." *Id.*  Dr. Weinstein discontinued plaintiff's use of Adderall. *Id.*  In May 2012, plaintiff felt "stressed," "emotional," unable to work, "overwhelmed," and "depressed." (Tr. 387).  Dr. Weinstein opined that she should not be working and increased plaintiff's dosage of Cymbalta. *Id.*

In his decision, the ALJ considered the treatment notes and reports of Dr. Weinstein, but gave them little weight.  First, the ALJ stated that Dr. Weinstein was given an inaccurate psychiatric history by the plaintiff (Tr. 18).  Specifically, plaintiff reported to

---

[3]  Adderall is a stimulant used to treat ADHD. *See* drugs.com/adderall.html.

[4]  Zoloft and Cymbalta are both antidepressants.  *See* drugs.com/zoloft.html; drugs.com/cymbalta.html.

Dr. Weinstein that she had attempted suicide in the past (Tr. 378), but treatment notes from her emergency room visit to ECMC in July 2007 indicate that she cut her wrist with the broken handle of a mug after an argument with her boyfriend. She did not want to hurt herself, but was angry and merely wanted to scare her boyfriend (Tr. 209).  Additionally, the ALJ stated that Dr. Weinstein based her assessments almost entirely on plaintiff's self-reported symptoms. For instance, at the initial psychiatric evaluation, Dr. Weinstein found plaintiff's Global Assessment of Functioning ("GAF") score to be 40, which signifies serious symptoms, indicated by some impairment in reality testing or communication, or major impairment in several areas, including work, school, family, judgment, thinking or mood.[5] At that time, Dr. Weinstein found plaintiff to be pleasant, cooperative, coherent, and goal-directed with fair insight and judgment (Tr. 379).  The ALJ found the low GAF score to be internally inconsistent with Dr. Weinstein's clinical findings (Tr. 18).  Additionally, Dr. Weinstein stated in May 2012 that plaintiff should not be working based on her "prominent mood instability" (Tr. 387).  However, the ALJ noted that at the hearing in September 2012, plaintiff cited only the lifting of heavy objects during pregnancy as the reason she could not do her previous work at the Home Depot (Tr. 31).

Here, the ALJ gave little weight to Dr. Weinstein's opinion in May 2012 that plaintiff "should not be working."  This opinion was unsupported by the generally benign clinical findings in the medical records and inconsistent with the other substantial evidence in the record which indicated that plaintiff's impairments caused no more than moderate limitations in a range of mental performance categories. In the court's view, the ALJ

---

[5]  The GAF assigns a clinical judgment in numerical fashion to the individual's overall functioning level.  *See* www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf.

sufficiently articulated his reasons for the weight he afforded Dr. Weinstein's opinion. Additionally, the ALJ was not required to recontact Dr Weinstein for further development of the medical record.  The Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel...." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted); *see Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (duty to develop record is "heightened when a claimant proceeds *pro se* "). This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y. 2004). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

Here, there are no obvious gaps or deficiencies in the administrative record that would trigger the ALJ's duty to recontact Dr. Weinstein.  Based on the court's review, and upon consideration of the record as a whole, the court finds that the ALJ's RFC assessment in this case was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law regarding the weight to be accorded to the opinions of medical sources in a manner sufficient to allow plaintiff and the court to follow his reasoning, and is supported by substantial evidence. Accordingly, plaintiff is not entitled

to reversal or remand on the ground that the ALJ improperly considered the opinion of plaintiff's treating physician.

### C. Credibility Assessment

Finally, plaintiff argues that the ALJ erred in his assessment of her credibility with respect to her testimony and statements about the limiting effects of her mental impairment.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F.Supp.2d 198, 205 (W.D.N.Y. 2005), quoted in *Hogan v. Astrue*, 491 F.Supp.2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other

measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. §§ 404.1529(c)(3) (i)-(vii), 416.929(c)(3)(i)-(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance. The ALJ conducted a thorough examination of the treatment records, treating source opinions, and other medical evidence in finding that plaintiff's mental impairments could reasonably be expected to cause the symptoms complained of, but that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 17). The ALJ noted plaintiff's testimony and written statements regarding her activities of daily living which included cleaning, laundry, shopping, socializing with friends and family, watching television, and using a computer for online shopping, surfing the web, and social

media (Tr. 37, 40-41,44-45, 140-44).  He found her "less than fully credible" for several reasons, including her failure to follow through with vocational rehabilitation services (Tr. 17, 328-29, 336, 340) and her lack of mental health treatment at the onset date of her disability (Tr. 18).[6] Only after her claim was denied did she seek counseling from Dr. Weinstein, who reported that plaintiff presented with "depression issues and wants SSI." (Tr. 378).  The ALJ noted that while plaintiff complained of depression as a lifelong problem, treatment records from 2009 and 2010 indicated no complaints of anxiety or depression (Tr. 277, 283).[7]

In the court's view, the ALJ's credibility finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of her symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security regulations and rulings, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

---

[6] The ALJ did not, as plaintiff suggests, find her less than credible based on her lack of reticence regarding her ability to care for her unborn child. *See* Item 8-1, p. 21.  The ALJ's observations were made in the context of his discussion of plaintiff's capacity for concentration, persistence, and pace and were in no way determinative of the issue (Tr. 14, 16).

[7] The court notes that plaintiff reported feeling depressed in medical records from ECMC in 2007 (Tr. 209, 212), but the ALJ did not err in finding that plaintiff sought no treatment for depression through her primary care providers at the Elmwood Health Center until 2011.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

_____/s/ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:    October 28, 2015